**CSD 1001C** [07/01/18]
Name, Address, Telephone No. & I.D. No.

Leslie T. Gladstone, Esq. (SBN 144615)
Christin A. Batt, Esq. (SBN 222584)
FINANCIAL LAW GROUP
5656 La Jolla Blvd.
La Jolla, CA 92037
Telephone: (858) 454-9887; Facsimile: (858) 454-9596
Attorneys for Gerald H. Davis, Chapter 7 Trustee

Order Entered on
June 2, 2023
by Clerk U.S. Bankruptcy Court
Southern District of California

## UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re
PEPPERTREE PARK VILLAGES 9 & 10, LLC

Debtor.

BANKRUPTCY NO. 17-05137-LT7    **LODGED**

(Jointly Administered)

Date of Hearing: May 17, 2023
Time of Hearing: 2:00 p.m. Name of Judge: Laura S. Taylor

# ORDER ON
# MOTION FOR ORDER APPROVING COMPROMISE WITH HOWARD JUSTUS, JUSTUS ENTERPRISES, LLC, AND JUSTUS WALLACE PEPPERTREE PARK VILLAGES 7 & 8, LLC

The court orders as set forth on the continuation pages attached and numbered __2__ through __9__ with exhibits, if any, for a total of __9__ pages. Notice of Lodgment Docket Entry No. __1088__.

//
//
//
//
//
//
//

DATED: June 2, 2023

_[signature]_

Judge, United States Bankruptcy Court

ORDER ON: MOTION FOR ORDER APPROVING COMPROMISE WITH HOWARD JUSTUS, JUSTUS ENTERPRISES, LLC, AND JUSTUS WALLACE PEPPERTREE PARK VILLAGES 7 & 8 LLC
DEBTOR: PEPPERTREE PARK VILLAGES 9 & 10 LLC　　　　　　　　　　　　　　　CASE NO: 17-05137-LT7

On April 17, 2023, Gerald H. Davis, chapter 7 trustee (the "**Trustee**") filed and served his Motion (the "**Motion**") for Order Approving Compromise with Howard Justus, Justus Enterprises, LLC, and Justus Wallace Peppertree Park Villages 7 & 8, LLC ("**Justus Wallace**").  (ECF No. 1065)  On May 1, 2023, Northern Capital, Inc. ("**NCI**") filed a limited objection to the Motion (the "**NCI Objection**").  (ECF No. 1074)  On May 1, 2023, Peppertree Land Company ("**PLC**") filed opposition to the Motion (the "**PLC Opposition**").  (ECF No. 1075)  On May 8, 2023, the Trustee filed his replies to the NCI Objection and PLC Opposition (collectively, the "**Replies**").  (ECF Nos. 1077 and 1078)

On May 17, 2023, at 2:00 p.m., this matter came on regularly for hearing in the above-entitled Court.  Leslie T. Gladstone and Christin A. Batt of Financial Law Group PC appeared on behalf of the Trustee; Todd Schwartz and William Farmer of Paul Hastings LLP appeared on behalf of NCI; K. Todd Curry of Curry Advisors, A Prof. Law Corp., appeared on behalf of PLC; Jesse Finlayson of Finlayson Toffer Roosevelt & Lilly LLP appeared on behalf of Justus Wallace; Mark Wolfson of Foley & Lardner LLP appeared on behalf of Foley & Lardner, LLP; and no other appearances were made.

The Court having reviewed and considered the Motion, the NCI Objection, the PLC Opposition and the Reply, as well as extensive arguments and evidence presented at the hearing, for the reasons stated in the record and good cause appearing therefor,

IT IS HEREBY ORDERED that,

1.　　This Court's Tentative Ruling attached hereto as Exhibit 1 is affirmed and incorporated by reference.

2.　　The Motion is hereby granted in its entirety; the settlement between the Trustee and Justus Wallace (the "**Settlement Agreement**') is approved.

**IT IS SO ORDERED.**

# Exhibit 1

# Exhibit 1

3

TENTATIVE RULING

ISSUED BY JUDGE LAURA S. TAYLOR

| | |
|---|---|
| Bankruptcy Case Name: | Peppertree Park Villages 9 and 10, LLC |
| Bankruptcy Number: | 17-05137-LT7 |
| Hearing: | 05/17/2023 2:00 PM |
| Motion: | MOTION FOR ORDER APPROVING COMPROMISE WITH HOWARD JUSTUS, JUSTUS ENTERPRISES, AND JUSTUS WALLACE PEPPERTREE PARK VILLAGES 7 & 8, LLC FILED ON BEHALF OF GERALD H. DAVIS |

Hear. The Trustee moves (in the "Settlement Motion") for approval of his settlement agreement (the "Settlement") with Howard Justus, Justus Enterprises, and Justice Wallace Peppertree Park Villages 7 & 8 (the "Justus Parties"). Provisions of the Settlement include:

- Justus Wallace will have an allowed $7,533,703.44 general unsecured claim (Claim No. 4-3, the "Claim").

- The Justus Parties will pay $100,000 to the estate in exchange for a general release of all potential claims against the Justus Parties and any other entity owned or controlled by Mr. Justus (together the "Justus Entities").

- The Justus Entities will generally release the Debtor and Debtor's estate from all claims except the Claim.

- Justus Wallace will dismiss Debtor from the pending state court action.

- Court approval of the Settlement is required for Justus Wallace to move forward with the purchase of the property of Peppertree Park Villages 9 & 10.

Northern Capital Inc. objects to the settlement only as to the allowance of the Claim in full. In the body of its objection, Northern Capital seeks to reassert its withdrawn Motion for Reconsideration of a prior order and to partially disallow the Claim.

Peppertree Land Company joins in the objections by Northern Capital and further opposes the Trustee's motions as described in the tentative on the related Sale Motion.

The Court will hear argument but is inclined to grant the Settlement Motion.

4

Signed by Judge Laura Stuart Taylor June 2, 2023

**Background**

The Claim arises out of a judgment in favor of Meritage Homes, the former owner of Peppertree Park Villages 7 & 8, against Peppertree Park Villages 9 & 10, Peppertree Land Company, Northern Capital, and Duane Urquhart ("Debtors"). That judgment is on appeal or subject to appeal. On March 2, 2018, Debtors filed an objection to the Claim and Meritage's claims in each respective proceeding. Dkt. No. 211. On July 8, 2020, Meritage and Debtors stipulated that the claim objection would be stayed pending determination of the state court action, and that the state court action would determine the claim objection and the amount of the Claim; the Court entered an order pursuant to the stipulation (the "Stay Order"). Dkt. Nos. 717, 718.

In or around October of 2021, Debtor hired Justus Enterprises as its Chief Restructuring Officer. Debtors negotiated a global settlement with Meritage and two Justus Entities, including Justus Wallace. In June of 2022, the settlement collapsed, Justus Enterprises resigned its position with Debtor, and the Court converted the case to chapter 7. Justus Wallace subsequently acquired the Peppertree Park Villages 7 & 8 real property and the Claim from Meritage.

On September 8, 2022, Northern Capital filed a motion for the Court to reconsider the Stay Order and partially disallow the claim (the "Reconsideration Motion"). Dkt. No. 932. Upon request of the Trustee, Northern Capital withdrew that motion before the Court heard the matter. Northern Capital seeks to refile the Reconsideration Motion through its objection to this Settlement Motion.

After the case was converted, the Trustee executed a cooperation agreement with Debtors to further the sale of the Peppertree Park Villages 9 & 10 property. Dkt. No. 1001.

**Standard**

Courts analyze the propriety of a settlement agreement under the rule announced by the Ninth Circuit in *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986). The Court there explained that "[t]he law favors compromise" in order "to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Id.* at 1380–81.

In conducting the *A & C Properties* analysis, the court "determin[es] the fairness, reasonableness and adequacy of a proposed settlement agreement" through mandatory consideration of four factors: "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Id.* at 1381. As to the final factor, the Ninth Circuit stated that the objections of creditors, while entitled to due deference, "are not controlling" in weighing the factors and determining the deciding issue—"whether the compromise is in the best interest of the bankrupt estate." *Id*. at 1382.

In engaging in its analysis, courts need not conduct a "mini trial on the merits," but need only "canvass the issues." *In re Open Med. Inst., Inc.*, 639 B.R. 169, 181

(B.A.P. 9th Cir. 2022). "Each factor need not be treated in a vacuum; rather, the factors should be considered as a whole to determine whether the settlement compares favorably with the expected rewards of litigation." *Id*. at 180. The question is "whether the settlement falls below the lowest point in the range of reasonableness.'" *In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004).

**Analysis**

Peppertree Land Company does not appear to have standing to object to the settlement. Unlike Northern Capital, it is not a creditor. It should be prepared to explain its theory on standing at the hearing.

Northern Capital makes a variety of (sometimes contradictory) arguments, some of which fit into the *A & C Properties* analysis: (1) the allowed amount of the Claim is governed by the Stay Order; (2) the Stay Order should be reconsidered (but apparently not to permit settlement), and the Claim partially disallowed; (3) the Trustee provided "scant evidence as to the merits of allowing" the Claim; (4) the Claim should be equitably disallowed due to the Justus Parties' actions; (5) the Trustee should be estopped from effectively mooting the Reconsideration Motion because he requested that Northern Capital withdraw it; (6) the Claim amount can be determined after the sale like the other administrative claims; (7) the Cooperation Agreement's § 363(m) provision is rendered illusory by the Settlement; and (8) the Justus Entities benefitting from the Settlement must be identified. At the same time, Northern Capital states it "does not object to the Trustee's exercise of his business judgment" in whether to pursue estate causes of action, which it admits it lacks standing or authority to bring. It states it merely seeks "to participate in the claims reconciliation process." But in essence, its claimed participation in the claims reconciliation process based on the Justus Parties' actions is an objection to the Trustee's business judgment to accept the settlement rather than pursue claims against the Justus Parties.

The Court is not inclined to consider the Reconsideration Motion without Northern Capital properly refiling it and the Trustee having the opportunity to respond. Thus, the Court considers Northern Capital's equitable disallowance claim only as it affects the *A & C Properties* analysis.

The Court is inclined to agree that the *A & C Properties* factors strongly support approval of the Trustee's Settlement with Justus Wallace notwithstanding the objection as to the allowed claim amount.

### Probability of Success in Litigation.

The Claim is based on a Superior Court judgment for, among other things, breach of contract, that Justus Wallace purchased from Meritage. Mr. Justus was no longer working for or with the Debtor at the time of the purchase. The Superior Court entered that judgment on July 21, 2017, long before any alleged errors in judgment or breaches of duty by Mr. Justus—Debtor hired Justus Enterprises in October of 2021. The briefing contains no information regarding the Trustee's likelihood of success in appealing the judgment underlying the Claim. The Court will hear from the parties on this point, but there is no specific evidence of infirmity in the trial court decision or suggestion that reversal is likely. Given the estate's lack of funds to pursue the appeal, and the Court's knowledge of the merits, the Court concludes that the state court

judgment will likely survive. Interestingly, no one argues that this should not be the Court's operative assumption. The attack on the Claim relates to matters other than the likelihood of future litigation success in state court.

Rather, Northern Capital largely objects to the amount of the Claim due to potential offset through claims the Trustee may have against the Justus Parties based on their post-judgment behavior. The Trustee acknowledges that the theories of recovery are not facially meritless. But he notes that the litigation is not certain of success, he lacks funds to meet what is likely to be a vigorous defense, and, in particular, there are problems with establishing damages. On reply, he is more pointed. He notes there that his investigation indicates a previous favorable settlement was not unilaterally scuttled by one or more of the Justus parties and that "it was undermined in large part by Mr. Urquhart's conduct." Given its long history with this case, the Court concludes that the Trustee's concerns with the likelihood of success are valid.

Northern Capital, in essence, asks that the Court reduce the claim on equitable grounds and bind the Justus Entities to a previously agreed settlement/deal that fell apart. But the Court is highly unlikely to significantly limit the Claim if it determines that it is valid *ab initio* in the absence of proof of a specific amount of damages caused solely by the Justus Entities. There is no such specific evidence in the record, in support of the reconsideration motion or otherwise. And the Justus Entities paid millions of dollars in acquiring the Claim. Why would it be equitable to reduce it to $650,000?

From the Court's knowledge of the case after presiding over it since 2017, the assertion on reply that Mr. Urquhart was culpable for the settlement falling apart in large measure cannot be disregarded as a serious risk. And Meritage would be testifying as to what occurred. Not to put too fine a point on it, but Meritage spent years telling the Court that Mr. Urquhart was not to be trusted. There is no love lost there. And the fact that Meritage went on to do a deal with the Justus Entities suggests that there wasn't a complete breakdown in their relationship on account of loss of the global deal. The Court concludes that there is a significant risk that the story ultimately believed by the Court is not one which results in any significant recovery via offset or otherwise against the Justus Entities.

In summary, the Court concludes that the likelihood of a large dollar success on the merits is not high. Thus, this prong favors settlement; it certainly does not support abandoning the settlement.

### Difficulties in Collection.

The Trustee does not foresee difficulties in collection of a judgment against the Justus Parties except to the extent that the Justus Parties would appeal, which would add to the expense of litigation. This factor does not support the settlement.

### Complexity and Expense of Litigation.

The cost of appeal and completing the state court case are left to the Court's imagination. They could be significant and the estate lacks funds to pursue the appeal. The Court assumes that no one will further the Debtor's defense in this litigation and that these expenses will be minimal. Thus, the necessity of these expenses is either neutral or very slightly favors settlement.

Signed by Judge Laura Stuart Taylor June 2, 2023

Attacking the Claim not with the merits of the state court judgment, but with theories of offset based on affirmative post-petition claims against the Justus Entities, however, will be complex, time-consuming, and expensive. The Trustee estimates that litigation expenses in pursuit of affirmative claims would range from $138,000.00 to $202,000.00, including approximately $60,000 in discovery, and that litigation costs would range from $15,000.00 to $23,000.00. The estate has no funds to litigate. This factor strongly favors settlement.

This litigation will also be complex. The Court will need to determine the basis for the offset. A trial is a certainty. If the Trustee wins, an appeal will follow in all likelihood. This factor strongly favors settlement.

And this process will take a long time, something this estate is out of. The secured loan is in default. Interest accrual is rapidly eating up available equity. This settlement is a contingency in a stalking horse bid that will lead to an auction that at a minimum will avoid a zero-recovery case and a foreclosure. The Court sees no way this delay would be anything but a disaster. This factor strongly favors settlement.

In total, this factor weighs in favor of approving the settlement.

**Interests of Creditors.**

Northern Capital is one of several unsecured creditors and the only objecting creditor. Its standing as an unsecured creditor, the only party financially impacted by allowance of the Claim, exists tenuously. Given the lack of any offer for the Property, the default on the secured loan, the default interest accrual, and the very significant priority administrative claims both at the chapter 11 and chapter 7 level, it is unlikely to receive much or, indeed, anything, on its unsecured claim. Its administrative claim, if allowed, will not be impacted by allowance of the Claim in any amount. Nonetheless, Northern Capital seeks a reduction in the Claim and denial of settlement approval.

The Court will hear argument but concludes that the interest of the non-objecting creditors—the majority—is in the prompt sale of the Property prior to the additional accrual of interest and its foreclosure. And at present, the settlement is a condition precedent to a stalking horse bid and an auction designed to maximize value.

The Settlement, along with the Sale Agreement, provides significant benefits to the estate in that they avoid:

- All future litigation costs in the state court. This may be a minor factor if the estate simply declines to further defend, but it is unlikely to be nothing.

- All costs of claim objection (and affirmative recovery). The undisputed assessment of the Trustee is that this could exceed $200,000.

- The risk of a recovery, or offset, under $100,000. The Trustee is necessarily coy, but his experienced counsel makes clear that this is not an easy case.

- The long delay in recovery of anything. A future recovery must be discounted for

time of recovery.

- Risk that a sale will not materialize in time to capture equity available with the Justice Wallace purchase. This is a $400,000 plus risk.

- Risk that the secured lender, even if ultimately paid in full, does not have to provide the carveout because the sale is delayed. This is a $380,000 plus factor.

This factor appears to strongly support settlement.

In short, the settlement appears well within the realm of reason. And unless there are very substantial overbids such that the Claim has value, it is a very good deal indeed.

Signed by Judge Laura Stuart Taylor June 2, 2023