Order Entered on
June 21, 2023
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In re:

PEPPERTREE PARK VILLAGES 9 AND 10, LLC,

Debtor.

BANKRUPTCY NO.: 17-05137-LT11
Date of Hearing: June 7, 2023
Time of Hearing: 10:00 a.m.
Name of Judge: Laura S. Taylor

# ORDER OVERRULING MOTION FOR RECONSIDERATION OF APPROVAL OF SALE MOTION

Related Motion/Order Docket Entry No. 1062

IT IS HEREBY ORDERED as set forth on the continuation page(s) attached, numbered two (2) through six (6).

DATED: June 21, 2023

Judge, United States Bankruptcy Court

In re Peppertree Park Villages 9 and 10, LLC                                    Case No. 17-05137-LT11

On June 13, 2023, Peppertree Land Company ("PLC") filed a "Limited Objection" (Dkt. No. 1124) to the initially lodged order ("Sale Order") approving the sale of Debtor assets pursuant to the Trustee's Motion for Orders (1) Approving Stalking Horse Agreement; (2) Approving Overbid Auction Procedures; (3) Approving Sale of Assets Pursuant to 11 U.S.C. § 363, Free and Clear of Liens, Claims, and Interests; and Granting Related Relief filed on behalf of the Trustee (the "Sale Motion"). (Dkt. No. 1062) In the Limited Objection, PLC alleged that the Sale Order, for the first time, provided notice that Peppertree Park Villages 9 and 10, LLC ("Peppertree") intended to sell not just its real property (the "Property") but all related development documents and applications. It noted that it, PLC, initiated the application process by a 2002 filing of Plan Amendment Authorization ("PAA Application") at a time when it owned the Property. *Id.* It asserted that PLC potentially has an interest in the PAA Application and attempted to require the Court to ignore almost six years of bankruptcy history, PLC's conduct in the case to date, PLC's failure to schedule this alleged asset, PLC's failure to take this position in connection with the disclosure statement, and PLC's failure to at any time during the case's six-year life take any position other than one consistent with Peppertree's right to sell and transfer the Property together with all related development documents assets and Peppertree's ownership of all such rights. As evidentiary support for this position, it cites a Declaration of Duane Urquhart. Dkt. No. 1091. The declaration states only that PLC, then owner of the Property, filed the PAA Application and initiated this step in the development process. It cites no other evidence and no other law. And, it does not begin to explain the above noted history of this case and prior positions taken by PLC and its principal, Mr. Urquhart.

PLC requests an alternative order leaving this issue open for another day and suggests that it must be resolved by adversary proceeding. The Court declines PLC's request for an alternative order and instead reaffirms its intention in previously approving the sale that it include the PAA Application and all related development rights and agreements.

While, as noted at the hearing, the Court is free to simply ignore this request in the context of the order, given its attempt insert a substantive objection at this point in time, the Court treats it, not as an objection to form of order, but instead, as a motion for reconsideration under Rule 59. The Court denies this Rule 59 request.

A motion under FRCP 59(e) should not be granted, absent highly unusual circumstances, unless the court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *School District No. 1J v. ACANDS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). The bankruptcy court generally has

discretion in deciding whether to reconsider its prior orders. *Elias v. United States Trustee (In re Elias)*, 188 F.3d 1160, 1161 (9th Cir. 1999).

 Here the extraordinary relief available under Rule 59 is not supported by the record currently before the Court. A review of the PLC objection to the Sale Motion makes clear that PLC never raised this issue in objection to that specific request. Further, PLC, at no point in time in connection with the proposed sale of the Property or previously in this bankruptcy case, stated, indicated, or even hinted that it retained any interest in development rights in general and the PAA Application in particular.

 And PLC's suggestion that it was not clear that development agreements and rights including the PAA Application were being sold borders on bad faith. The Court recognizes that Debtor's current counsel is new to the case and has experienced only a tiny fraction of the Court's six year history. But at all times in connection with the Property and at every step where Property rights have been considered as a subject of sale, the development rights have been part of the package. It was incumbent on PLC, and its principal, Mr. Urquhart, (who has a long history with both the Property and this case), to assert such a claim as an objection to the Sale Motion. It failed to do so. Nowhere in this document is there any explanation for the failure to do so beyond the bald assertion that they did not understand that these rights were being sold. Again, the Court's review of the record shows that no reasonable person with knowledge of this case would not know that all rights relevant to the Property and its development were being sold. Indeed, PLC counsel, while new to the case, has never explained any ambiguity beyond the fact that the Sale Order did not laboriously list each specific development agreement or document as one of the various assets being sold.

 Also, the record fails to support that PLC has any colorable claim that would require the Court to reconsider a broad order including the PAA Agreement. The Trustee and the Court made the following points, and the Court now reinforces them:

- PLC did not schedule an interest in any asset other than its interest in Peppertree and a small amount of cash. At no time during the six years of the case did it amend its schedules to assert ownership of the PAA Application. This is an admission, binding on PLC and Mr. Urquhart (who signed the schedules under penalty of perjury), that on the petition date PLC no longer owned the PAA Application or any asset other than a 50% interest in Peppertree and $1,800 in cash.

- The disclosure statement, in particular at pages 6 to 10, sets out in laborious detail of the development path for the Property from its initial acquisition by PLC to its current ownership by Peppertree. At no point in the disclosure statement is there any suggestion that Peppertree does not own, control, and have the right to convey the PAA Application and all development rights.

- In addition to the detailed description of the transfer of property and interest in the disclosure statement – a statement that is consistent with the PLC schedules –almost six years of conduct of this case is inconsistent with PLC's claim. The Court observes that no one in the courtroom in connection with the sale of Property has been involved with the case during its entire six year history except for the Judge. Indeed, because of changes in representation and counsel within law firms, the Court believes that no attorney now active in the case became involved with the case until after confirmation of the plan and default under the plan. But Mr. Urquhart was involved from the case's beginning.

    The Court is entitled to rely on its knowledge of the case and can say categorically that PLC during all times in the case acted consistent with its schedules and the disclosure statement in making clear to the Court that in proposing to reorganize and use the Property as an avenue for payment through its development or sale that Peppertree enjoyed not only ownership of the Property but control and ownership of all rights related to it and its development. Consistent with this, PLC has always taken the position that its rights to recovery from the Property through Peppertree are its only source of recovery in this case. These positions have been important to the Court's decisions throughout the case. Thus, its current change in position is barred by both waiver and judicial estoppel. Had the Court known at critical junctures in this case that PLC was taking the position that it could sabotage a sale, delay a sale, or impede a sale or the development process, the Court would not have declined to convert, appoint a trustee, or take other action.

    "Judicial estoppel is a flexible equitable doctrine that encompasses a variety of abuses, one form of which is preclusion of inconsistent positions that estops a party from gaining an advantage by taking one position and then seeking another advantage from an inconsistent position." *Cheng v. K & S Diversified Invs., Inc. (in re Cheng)*, 308 B.R. 448, 455 (9th Cir. BAP 2004), *aff'd*, 160 Fed.Appx. 644 (9th Cir. 2005).

    As an equitable doctrine, judicial estoppel is not easily defined. However, three factors are relevant to its application. *Hamilton v. State Farm Fire Cas. Co.*, 270 F.3d

778, 782–83 (9th Cir. 2001) (citing *N.H. v. Maine*, 532 U.S. 742, 750 (2001)). First, a party's position in the second matter must be "clearly inconsistent" with its position in the first matter. *Id*. at 782. Second, a court must have accepted the party's earlier position. *Id*. at 782–83. The third consideration is whether the party asserting an inconsistent position "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id*. at 783.

Thus, the standard for judicial estoppel is met here. PLC's current position on PAA Application ownership is inconsistent with its historical position in its schedules and otherwise; the Court relied on this position in connection with numerous positions over almost six years; and its new position will torpedo the sale to detriment of everyone except, perhaps,[1] PLC and its principal.

Most recently, the Court questioned whether PLC had standing to be heard in connection with the Sale Motion in any event. Again, the motion was crystal clear that Peppertree was selling the Property and all related development rights. PLC did not raise any alleged interest in the development rights when questioned as to standing. Instead, it acknowledged that its standing to be heard was contingent solely on the price being achieved for the Property and, even then, a price sufficient to make a distribution at the equity level. The Court allowed it to be heard notwithstanding its sincere doubt that such proceeds would emerge (they didn't).

The Court, thus, affirms its determinations regarding the Sale Motion, and confirms that the Property sold included all development rights. PLC has offered nothing but a two decade old historical fact, unsupported by other evidence and inconsistent with its own admissions in the schedules and otherwise throughout the case, for its assertion that it may have an interest in a key development document. Viewing its submission as a motion for reconsideration, it fails to appropriately explain why this issue could not be raised earlier and why it is not barred from taking such a position.

Having said this, PLC is free to file a more robust reconsideration motion. But in doing so, the Court warns that it must deal not just with a forward looking analysis that ignores the long history of this case and its own actions and the required bases for Rule 59 or 60 relief. It must explain why the rights it allegedly owns were not scheduled and why this is not dispositive. It must explain why the disclosure statement does not discuss this nuance and why this is not dispositive. It must explain why throughout the cases it acted in these administratively consolidated bankruptcy

---

[1] As a loss of this sale will almost certainly lead to loss of the GF Financial carveout and loss of the Property to foreclosure, the end game here is an uncertain one even for PLC.

cases consistent with ownership by Peppertree of all relevant development rights and why this is not dispositive.

Therefore,

Reconsideration of the approval of the Sale Motion is Denied.

Signed by Judge Laura Stuart Taylor June 21, 2023